**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOSHUA DUVALL, et al. | ) | CASE NO.: 19-11272(1)(12) |
| | ) | |
| _____Debtor(s)_____ | ) | |
| | ) | |
| NUTRIEN AG SOLUTIONS, INC., | ) | AP NO.  20-1012 |
| successor to SECURITY SEED AND | ) | |
| CHEMICAL, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA LEE DUVALL, et al. | ) | |
| | ) | |
| _____Defendant(s)___ | ) | |

**MEMORANDUM-OPINION**

The following constitutes the Court's Findings of Fact and Conclusions of Law with respect to the Cross-Motion for Summary Judgment and Response to Plaintiff's Motion for Partial Summary Judgment of John Deere Financial, f.s.b., d/b/a John Deere Financial ("Deere").[1]

**INTRODUCTION**

---

[1]Deere & Company and John Deere Financial are collectively referred to herein as "Deere."  John Deere Financial is referred to herein individually as "JDF."

John Deere Financial is a Federal Savings Bank doing business as John Deere Financial ("JDF").  JDF is an affiliate of John Deere and Company.  In 2013, Joshua Lee Duvall applied for a Multi-Use Agricultural/Commercial/Governmental Account, which he later defaulted on. The details of that transaction, which are the basis for Deere's Claim No. 3-3, are explained below.

Deere and Company ("Deere") provided financing to Joshua Lee Duvall for the purchase of several pieces of John Deere farm equipment between October of 2016 and December 2017. Deere and Joshua Lee Duvall entered into Loan Contracts-Security Agreements on each piece of equipment which granted Deere a security interest in the collateral.  Deere properly filed UCC-1 Financing Statements with the Kentucky Secretary of State's Office and properly perfected its purchase money security interests in the "Deere Collateral," defined below. Each Security Agreement also contained a cross-collateralization clause, under which Joshua Lee Duvall granted Deere a security interest in the equipment to secure his debt owed to JDF under the Multi-Use Account.  Details of these transactions are explained below.

Deere is a secured creditor herein that filed Claims 4 through 8 for amounts owed by Joshua Duvall pursuant to several Retail Installment Contract – Security Agreements.  Claims 4 through 8 are secured by first priority purchase money security interests ("PMSI") in the Deere Collateral (as defined herein).  Deere also filed Claim 3-3 for amounts owed on a Multi-Use Account line of credit with JDF, which is also secured by the Deere Collateral pursuant to valid cross-collateralization clauses in Deere's Security Agreements (as defined herein).  Deere has a valid first priority PMSI in the Deere Collateral securing the amounts owed in Claims 4 through 8 that is prior and superior to any other interest because Deere properly perfected its PMSI. Further, Deere's secured interests in the Deere Collateral are specifically prior and superior to

any interest of The Peoples Bank Marion, Kentucky because although Mr. Duvall attempted to refinance his equipment note installment accounts with Deere through The Peoples Bank Marion, Kentucky, the bank provided Deere with a short payoff, and Deere was not required to, and did not, release any of its prior-perfected liens on the Deere Collateral. Finally, Deere holds a second priority security interest in the Deere Collateral, behind only Deere's valid PMSI's, that secures the amounts owed in Claim 3-3 pursuant to a valid cross-collateralization clause.

## 1. FINDINGS OF FACT

### A.    *The Multi-Use Account.*

1.    On December 5, 2013, Joshua Lee Duvall ("Joshua Duvall") applied for a Multi-Use Agricultural/Commercial/Governmental Account ("Multi-Use Account") with JDF. The Multi-Use Account in governed by a credit agreement ("Credit Agreement").

2.    Joshua Duvall agreed that he would be in default under the terms of the Credit Agreement if he "fail[ed] to pay the Minimum Required Payment within 20 days after the Payment Due Date" or his "ability to repay is materially reduced by [his] exceeding [his] credit limit." Joshua Duvall further agreed that upon default JDF may close the Multi-Use Account to future purchases and JDF may demand immediate payment of the entire account balance, after giving notice and opportunity to cure the default.

3.    Joshua Duvall failed to pay Deere the entire balance due and cure the default under the Credit Agreement for his Multi-Use Account (account ending 6052) and a balance of $274,044.55, as reflected in Claim No. 3-3 remains due and owing as of the Petition Date (defined below).

**B.**    *The Retail Installment Contract – Security Agreements, Deere's UCC Filings, and Plaintiff's Blanket Lien UCC Amendment Filing.*

1.    On October 27, 2016, Deere and Joshua Lee Duvall entered into a Loan Contract – Security Agreement for the purchase of: (i) Three John Deere 5055E OOS 2WD Utility Tractors S/N XXXXXXXXXXXXX2998; XXXXXXXXXXXXX2859; XXXXXXXXXXXXX2967 ("5055 Tractors").  Deere filed a UCC Financing Statement with the Kentucky Secretary of State perfecting its interest in the 5055 Tractors on October 31, 2016.

2.    On April 26, 2017, Deere and Joshua Lee Duvall entered into a Loan Contract – Security Agreement for the purchase of: (i) a John Deere 324E Skid Steer S/N XXXXXXXXXXXXX1186 ("Skid Steer").  Deere filed a UCC Financing Statement with the Kentucky Secretary of State perfecting its interest in the Skid Steer on May 9, 2017.

3.    On June 30, 2017, Plaintiff filed UCC Financing Statement Amendment with the Kentucky Secretary of State for Joshua Duvall, and "the primary purpose of the Amendment was to add additional collateral to include all of [Joshua Duvall's] 'farm and business machinery, equipment and tools.' which had previously been deleted by a UCC Financing Statement Amendment filed on July 2, 2015."  (Pl. Motion, DN 59, at 5.)

4.    On October 13, 2017, Deere and Joshua Lee Duvall entered into a Loan Contract – Security Agreement for the purchase of: (i) a John Deere 1990DH CCS Air Seeder S/N XXXXXXXXXXXXX5225 ("Seeder").  Deere filed a UCC Financing Statement with the Kentucky Secretary of State perfecting its interest in the Seeder on October 16, 2017.

5.    On October 27, 2017, Deere and Joshua Lee Duvall entered into a Loan Contract – Security Agreement for the purchase of: (i) a John Deere 6120R MFWD Utility Cab Tractor S/N XXXXXXXXXXXXX1115 ("6120 Tractor"); (ii) a John Deere 620R Loader S/N

4

XXXXXXXXXXXXX4392 ("Loader"); and (iii) a Frontier AB13G Heavy Duty Single Tine Bale Spear S/N XXXXXXXXXXXXX3295 ("Bale Spear").  Deere filed a UCC Financing Statement with the Kentucky Secretary of State perfecting its interest in the 6120 Tractor, Loader, and Bale Spear on October 31, 2017.

6.     On December 29, 2017, Deere and Joshua Lee Duvall entered into a Loan Contract – Security Agreement for the purchase of: (i) a John Deere 946 Mower Conditioner S/N XXXXXXXXXXXXX0017 ("Mower-Conditioner").  Deere filed a UCC Financing Statement with the Kentucky Secretary of State perfecting its interest in the Mower-Conditioner on January 9, 2018.

7.     The aforementioned Loan Contract – Security Agreements are collectively referred to herein at the "Security Agreements."

8.     The 5055 Tractors, Skid Steer, Seeder, 6120 Tractor, Loader, Bale Spear, and Mower-Conditioner are referred to collectively herein as the "Deere Collateral."

9.     Joshua Duvall agreed in each of the Security Agreements to grant Deere a security interest in the collateral described therein, and also to a cross-collateralization clause, which states:

> You grant us, and any assignee of this Contract or any affiliate of that assignee, a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any assignee of this Contract or any affiliates of that assignee, at any time and you agree that any security interest you have granted or hereafter grant to us or any assignee of this Contract or any affiliate of that assignee shall also secure your obligations under this Contract…

(*See e.g.* DN 84-4, Section 5.)

10.     Under the terms of the Security Agreements Deere may determine Joshua Duvall to be in default if "(e) a default occurs under any other agreement between (or any of your

5

affiliates) and us (or any assignee of this Contract or any affiliate of that assignee)." (*See e.g.* DN 84-4, Section 9.)

11. Deere properly filed its UCC Financing Statements with the Kentucky Secretary of State's Office, thereby perfecting its purchase money security interests in the 5055 Tractors, Seeder, 6120 Tractor, Loader, Bale Spear, Mower-Conditioner, and Skid Steer (collectively referred to as "the Collateral").

12. There has been a default under the Credit Agreement making the entire balance under the Credit Agreement and the entire balance under each of the Security Agreements due, and the Collateral is currently being detained by Joshua Duvall.

13. Full payment for the principal and interest accrued on the Multi-Use Account has not been received, and Joshua Duvall is indebted to Deere under the terms of the Credit Agreement in the amount reflected in Claim No. 3-3.

14. Joshua Duvall's default under the terms of the Credit Agreement also constitutes a default under the Security Agreements, and Joshua Duvall is indebted to Deere under the terms of the Security Agreements in the amounts reflected in Claim Nos. 4-1, 5-1, 6-1, 7-2, and 8-1, respectively.

15. A chronological chart detailing the UCC filing dates for each of the relevant liens herein is below:

| Liens / Collateral | | Date |
|---|---|---|
| Deere | 5055 Tractors | 10/31/2016 |
| | Skid Steer | 5/9/2017 |

| | | |
|---|---|---|
| Nutrien Ag Solutions Blanket Lien Amendment | | 6/30/2017 |
| Deere | Seeder | 10/16/2017 |
| | 6120 Tractor | 10/31/2017 |
| | Loader | 10/31/2017 |
| | Bale Spear | 10/31/2017 |
| | Mower-Conditioner | 1/9/2018 |

### C.    The Defaults and Subsequent Negotiations.

1.    Deere sent Joshua Duvall a Notice of Default, Acceleration & Demand for Surrender on December 10, 2018 notifying him of his failure to make payments on several accounts-14].  By this letter Deere further notified Joshua Duvall that "due to these payment defaults, and pursuant to the terms of the credit agreements on each of the Accounts, you are in default on all Accounts and each account is due and payable in full," and demanding immediate surrender of the equipment associated with the accounts.

2.    Deere attempted to repossess its collateral due to Joshua Duvall's cross-default, but Deere's self-help efforts were prevented by Joshua Duvall. During the next few months,

Deere, through its own representatives and through counsel, attempted to work out agreeable terms with Joshua Duvall to bring his account current.

3.    Counsel for Deere, Elizabeth Lee Thompson, communicated with counsel for Joshua Duvall, Mark Flener, regarding Joshua Duvall's account with Deere.

4.    On February 6, 2019, Ms. Thompson sent an e-mail to Mr. Flener providing the balances owed on each of Deere's accounts as follows:

> *Good afternoon. My client, Deere & Company, has several open accounts with Joshua Duvall secured by the following Collateral:*
>
> *JD 5055E Tractor SNxxx2998*
>
> *JD 5055E Tractor SNxxx2859*
>
> *JD 5055E Tractor SNxxx2967*
>
> *JD 324E Skid Steer Loader SN...1186*
>
> *JD 1990 Seeder SNxxx5225*
>
> *JD 6120R Tractor SNxxx1115*
>
> *JD 620R Loader SNxxx4392*
>
> *Frontier AB13 Bale Fork SNxxx3295*
>
> *JD 946 Mower SNxxx0017.*
>
> *Account Nos. XXX3762, XXX5866, XXX2841 and XXX3157 are current.*
>
> *However, Account No. XXX6052 is in default and has a balance of $272,250.62 as of 11/31/19. All accounts are secured by all of the above equipment. Deere is willing to allow Joshua Duvall 6 months within which to pay off Account No. XX6052. Please reply to this email with a proposal for payment of Account No. XXX6052. Thanks.*
>
> (Thompson Decl., DN 84-18, ¶ 6; DN 84-19.)

8

5.      On February 15, 2019, in follow up to Ms. Thompson's email of February 6, 2019, Ms. Thompson sent an e-mail with a copy of Deere's retail installment contract attached thereto which e-mail stated:

> *Attached is one of Deere's retail installment contracts. Joshua Duvall has several but they all contain the same terms. If you want me to send the others let me know. As you can see, Para. 5 on p. 2 has a cross collateral clause.*

(Thompson Decl., DN 84-18, ¶ 7; DN 84-20.)

6.      On May 21, 2019, Mr. Flener sent an e-mail to Ms. Thompson with Joshua Duvall's offer to pay off Deere's equipment loans and leave the "Farm Plan" (Multi-Use Account) debt as an unsecured debt.

> *Dear Liz: Josh Duvall believes he has a loan worked out that will pay the John Deere equipment loan. The Bank he is working on getting a commitment is Peoples Bank based in Glasgow. The Bank and Josh believe the equipment is worth about what is owed on it but not much more. Accordingly the offer would be for a payoff of the equipment while the Farm Plan debt would become an unsecured debt. Please review and advise whether your client would entertain such an offer. This is not a pipe dream as I understand from the Bank that it is a go if John Deere will agree.*

(Thompson Decl., DN 84-18, ¶ 8; DN 84-21.)

7.      On May 29, 2019, Ms. Thompson sent an e-mail to Mr. Flener rejecting the offer contained in his May 21, 2109 e-mail, and demanding that Joshua Duvall satisfy amounts owed on all of Deere's accounts prior to any lien releases, as follows:

> *Deere would be willing to give Joshua Duvall a lien release covering Deere's equipment in return for Joshua Duvall paying off the equipment loans and paying $60,000 on the farm plan loan. Joshua Duvall would still be obligated for the remainder of the farm plan loan as an unsecured debt. Based on Deere's valuation of the equipment if recovered it could be sold by Deere for amounts in excess of the below. Payment would be applied to the accounts as follows:*

*$60,000 to be paid towards the farm plan account XXXXX X6052.*

*XXXXXXXX3762 $26,245.78*

*XXXXXXXX0927 $10,426.56*

*XXXXXXXX5866 $67,742.88*

*XXXXXXXX3157 $62,659.45*

*XXXXXXXX2841 $15,021.52*

*Payoffs are good through 6/14/2019.*

(Thompson Decl., DN 84-18, ¶ 9; DN 84-22.)

8.      Deere communicated with Joshua Duvall multiple times on May 28, 2019.  (*See* Kenyon Supp. Decl. DN 97-1, ¶ 8; Account Notes, DN 84-15 and DN 97-3, at BK0000012.) The Account Notes reflect that Joshua Duvall called and spoke with Deere representative Greg Woodard, stating that Joshua Duvall was at a bank and was requesting a payoff on the equipment notes.  *Id.*  The notes reflect that Mr. Woodard told Joshua Duvall that "no equipment payoffs [were] available unless Frank [DePhillips] reviews and gives them due to large [Multi-Use Account] balance."  (*Id.*)  The notes further reflect that Mr. Woodard could not give Joshua Duvall a payoff on the equipment notes given that he "could not tell that we were in agreement on how all accounts would be handled and [he] didn't want a misunderstanding."  (*Id.*)

9.      It is typical that the litigation administrator assigned to the borrower's accounts is the only litigation administrator able to provide an accurate payoff to the borrower when requested. This prevents litigation administrators unfamiliar with the accounts and past negotiations from giving an incorrect payoff.

10.     Deere and Joshua Duvall never came to an agreement as to how the accounts, including the Multi-Use Account, would be paid or settled.

11.     Joshua Duvall never sought, nor was he granted, written consent to transfer any of the Deere Collateral from himself individually to D and D Farms.

12.     Joshua Duvall never made Deere aware that he had transferred the Deere Collateral to D and D Farms subsequent to the purported transfer.

13.     The Peoples Bank, Marion, Kentucky (defendant herein), or any of its agents or representatives, never contacted Deere for a payoff statement on the Multi-Use Account (Claim 3-3) or the equipment note accounts (Claims 4 through 8).

14.     On or about June 10, 2019, Deere received a payment in the amount of $180,000 which was insufficient and was not accepted as a payoff of Deere's lien on its collateral.   On June 10, 2019, Ms. Thompson sent an e-mail to Mr. Flener so stating:

> *Deere received $180,000 from Joshua Duvall this am. Please be advised that Deere will apply this payment to Joshua Duvall's accounts in accordance with the terms of their agreements but can not accept this in full satisfaction of their debts. Deere also can not release their equipment liens in return for this payment.*

(Thompson Decl., DN 84-18, ¶ 10; Notice of Filing of Exhibit, DN 123 at 4.)

15.     Also on June 10, 2019, Mr. DePhillips sent an email to Joshua Duvall stating:

> *Our Accounting team notified me this morning that we received a $180,000 payment from you. Please be advised that we will apply this payment to your accounts in accordance with the terms of our agreements but cannot accept this in full satisfaction of these debts. John Deere also can not release our equipment liens in return for this payment.*

(DePhillips Decl. DN 84-16, ¶ 6; DN 84-17.)

16.     The Account Notes reflect that Joshua Duvall received these email communications, because they show Joshua Duvall emailed Mr. DePhillips requesting a breakdown of how the $180,000 payment was applied. When Joshua Duvall was informed that his payment was short, Joshua Duvall said he would "send a payoff for remaining installment

balances" and asked Mr. DePhillips to "send him the amounts good through end of next week." (Account Notes, DN 84-15, at BK0000014.)

17.    No other writing or documentation was received by Deere with the check from Peoples Bank other than that included in DN 97-2.

18.    The $180,000 check did not contain a "conspicuous statement" that the check constituted full satisfaction of the claim.

19.    Peoples Bank did not send Deere an accompanying written communication with the $180,000 check containing a "conspicuous statement" that the check constituted full satisfaction of the claim.

20.    On July 19, 2019, Ms. Thompson sent an additional e-mail to Mr. Flener in an attempt to resolve the outstanding balance owed to satisfy Deere's lien on its collateral, but no agreement regarding same was ever reached.

### D.    *The District Court Action.*

1.    On May 17, 2019, Deere filed an intervening complaint in the foreclosure action filed by the Plaintiff herein in the United States District Court for the Western District of Kentucky, Case No. 18-cv-00123, in order to assert replevin and breach of contract claims against Joshua Duvall.  (*See* Thompson Decl. DN 84-18, ¶ 12; DN 84-24.)

2.    Deere never received a full payoff on the equipment note installment accounts (Claims 4 through 8).

### E.    *The Bankruptcy.*

1.    On December 10, 2019 (the "Petition Date"), Joshua Duvall and Brandi Duvall (the "Debtors") filed for relief under Chapter 12 of Title 11 of the U.S. Code.

2.      Deere filed its Proofs of Claim as follows:

Claim 3-1, on December 19, 2019, as amended on January 3, 2020 (*see* Claim 3-2), and again on February 10, 2020 (*see* Claim 3-3)

II.      Claim 4-1 on December 19, 2019

III.     Claim 5-1 on December 19, 2019

IV.      Claim 6-1 on December 19, 2019

V.       Claim 7-1 on December 19, 2019, as amended (*see* Claim 7-2) on January 21, 2020

VI.      Claim 8-1 on December 19, 2019

1.      The balances reflected in Claim Nos. 4-1, 5-1, 6-1, 7-2, and 8-1, remain due and owing under the Security Agreements.

2.      On March 19, 2020, Plaintiff filed this adversary proceeding in order to, among other things, establish the priority of liens in certain equipment owned by the Debtors.

3.      Deere filed its Motion for Summary Judgment against Plaintiff and all defendants herein on August 20, 2020.

4.      Deere filed its Combined Reply and Response to Motions for Summary Judgment on September 3, 2020.

5.      Deere filed its Reply to Response of the Peoples Bank to the Cross-Motion of the Two Deere Entities for Summary Judgment on September 3, 2020.

6.      Peoples Bank failed to raise the defense of accord and satisfaction in its answer. *See* Answer and Cross-Claim of Peoples Bank.

# VII. CONCLUSIONS OF LAW

*A.    Deere Possesses First Priority Purchase Money Security Interests in the Deere Collateral.*

1.    Under the Kentucky Uniform Commercial Code, "[a] security interest in goods is a purchase-money security interest (A) To the extent that the goods are purchase-money collateral with respect to that security interest." KRS 355.9-103(2).

2.    "'Purchase-money collateral' means goods or software that secures a purchase-money obligation incurred with respect to that collateral." KRS 355.9-103(1).

3.    The money Deere loaned to Joshua Duvall under the Security Agreements was used entirely to finance Joshua Duvall's purchase of the Deere Collateral, as evidenced by the Security Agreements.

4.    Under the Kentucky Uniform Commercial Code, Deere possesses valid purchase money security interests in the Deere Collateral.

5.    Deere properly perfected its purchase money security interests in the Deere Collateral in accordance with KRS 355.9-310(1) by filing its Financing Statements timely with the Kentucky Secretary of State.

6.    As such, "a perfected purchase-money security interest in goods other than inventory or livestock has priority over a conflicting security interest in the same goods." KRS 355.9-324(1).

7.    Deere's purchase money security interests in the Deere Collateral are prior and superior to any other interest in the Deere Collateral.

8.    Deere is entitled to summary judgment that Deere's security interest (securing the amounts owed on Claims 4 through 8) in the Deere Collateral is superior to any interest that Plaintiff or Defendants may have in the Deere Collateral.

***B.       Deere Possesses a Second Priority Security Interest in the Deere Collateral, Behind Only Deere's Valid PMSI's, Which Secures the Amounts Owed in Claim 3-3 Pursuant to a Valid Cross-Collateralization Clause.***

1.       Joshua Duvall agreed in each of the Security Agreements to grant Deere a security interest in the collateral described therein, and also to a cross-collateralization clause, which states:

> You grant us, and any assignee of this Contract or any affiliate of that assignee, a security interest in the Equipment (and all proceeds thereof) to secure all of your obligations under this Contract and any other obligations which you may have to us or any assignee of this Contract or any affiliates of that assignee, at any time and you agree that any security interest you have granted or hereafter grant to us or any assignee of this Contract or any affiliate of that assignee shall also secure your obligations under this Contract…

(*See e.g.* DN 84-4, Section 5.)

2.       Deere properly filed its Financing Statements with the Kentucky Secretary of State's Office with respect to all of the Deere Collateral.

3.       The Deere Collateral therefore secures Joshua Duvall's obligations under the Credit Agreement for the Multi-Use Account pursuant to the cross-collateralization clauses contained in the Security Agreements.

4.       The cross-collateralization clause contained in each of the Security Agreements is valid under the Kentucky Uniform Commercial Code.  *See* KRS § 355.9-204.  That section states:

> (1)     Except as otherwise provided in subsection (2) of this section, a security agreement may create or provide for a security interest in after-acquired collateral.

> […]

(2)    A security agreement may provide that collateral secures, or that accounts, chattel paper, payment intangibles, or promissory notes are sold in connection with, future advances or other value, whether or not the advances or value are given pursuant to commitment.

5.    The comments to this section explain that "Subsection [(1)], together with subsection [(3)], also validates "cross-collateral" clauses under which collateral acquired at any time secures advances *whenever made*." *Id.* cmt. 2 (emphasis added).

Indeed, the parties are free to agree that a security interest secures any obligation whatsoever. Determining the obligations secured by collateral is solely a matter of construing the parties' agreement under applicable law. This Article rejects the holdings of cases decided under former Article 9 that applied other tests, such as whether a future advance or other subsequently incurred obligation was of the same or a similar type or class as earlier advances and obligations secured by the collateral.

*Id.* cmt. 5.

6.    Under the Kentucky Uniform Commercial Code, the cross-collateralization clauses are valid, and the amounts loaned to Joshua Duvall via the Multi-Use Account are also secured by the Deere Collateral.

7.    Deere has a second priority security interest in the Deere Collateral, behind only Deere's valid PMSI's, that secures the amounts owed in Claim 3-3 pursuant to a valid cross-collateralization clause.

8.    Deere possesses a second priority security interest for the amounts owed on the Multi-Use Account (Claim 3-3) in the three 5055 Tractors and the Skid Steer, because Deere was undeniably the first to perfect for those pieces of equipment.  KRS 355.9-322(a)(1).

**C.    Deere's Security Interests in the Deere Collateral are Prior and Superior to Any Interest Of Peoples Bank.**

1.       In each of the Security Agreements Joshua Duvall agreed: "You will not assign, pledge or otherwise transfer any of your rights or interests in this Contract or any Equipment without our prior written consent. Any assignment without our consent will be void." (*See e.g.* DN 84-4, Section 11.)

2.       Joshua Duvall was precluded by the terms of his Security Agreements with Deere from transferring the Deere Collateral to D and D Farms, and any transfer is void.

3.       The alleged transfer from Joshua Duvall to D&D Farms was not free and clear of any of Deere's liens in the Deere Collateral as a matter of law because Deere properly perfected its security interests.

4.       Peoples Bank filed a UCC financing statement under the name of D and D Farms, not Joshua Duvall, and Deere could not have reasonably expected that the Peoples Bank was claiming a superior secured interest in the Deere Collateral, because Deere was not made aware of the existence of D and D Farms by Joshua Duvall, or the purported transfer of the Deere Collateral.

5.       Deere is entitled to collect attorneys' fees and other costs from Joshua Duvall under the Security Agreements. (*See e.g.* DN 84-4, Section 10; DN 84-3, Multi-Use Account Terms, at p. 2, "Other Fees and Charges," "Collection Costs" Section.)

6.       Per the provisions of the Security Agreements, payments are applied "first to any late charges, any charges for dishonored checks and any other fees or costs due under this agreement, then to finance charges, computed on the date the payment is received and the remainder to the Amount Financed." (*See e.g.* DN 84-4, Section 3.)

7.       Deere's liens on the Deere Collateral are prior and superior to any lien of Peoples Bank, Marion Kentucky.

8.      Deere was not given a full payoff on the installment accounts by Peoples Bank, and Deere cannot be made to release (or have subordinated) its first, prior, and superior liens on the Deere Collateral for that reason.

9.      Peoples Bank is the only party with standing to raise the accord and satisfaction defense.[2]

10.     Failure to raise accord and satisfaction in the answer operates as a waiver of the defense. Fed. R. Civ. Proc. 8(c)(1); *Macurdy v. Sikov & Love, P.A.,* 894 F.2d 818, 824 (6th Cir. 1990) ("Accord and satisfaction is an affirmative defense.")

11.     Rule 8 of the Federal Rules of Civil Procedure provides:

(c) Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction . . . and any other matter constituting an . . . affirmative defense. . . .

As Wright & Miller notes,

Generally, a failure to plead an affirmative defense results in the waiver of that defense and its exclusion from the case. This proposition has been announced by numerous federal courts in cases involving a variety of affirmative defenses, including accord and satisfaction. . . .
5 C. Wright & A. Miller, *Federal Practice & Procedure*, § 1278, (1969).

… to allow the defendants to raise this affirmative defense initially at the summary judgment motion would violate Rule 8(c) and unfairly prejudice the plaintiff, which is why the rule requires that such a defense be asserted in the answer. We hold that this defense has been waived.")

12.     Peoples Bank waived the accord and satisfaction defense and cannot raise it now.

---

[2] Although Joshua Duvall joined in Peoples Bank's response wherein the accord and satisfaction defense was raised, it is Peoples Bank that tendered the $180,000 check to Deere, and therefore Peoples Bank is the only party that may raise the defense. *See Sanders v. Motorists Mut. Ins. Co*., Civil Action No. 3: 08-37-DCR, 2009 U.S. Dist. LEXIS 64990, at *5 (E.D. Ky. July 27, 2009) ("Thus, it was Welch Builders and subcontractors -- not Motorists Mutual -- who tendered the instrument in satisfaction of the Sanders' claim, and who would thus be in a position to raise an accord and satisfaction defense.")

13.    Under the Kentucky Uniform Commercial Code, the accord and satisfaction law states as follows:

(1)    If a person against whom a claim is asserted proves that:

(a) That person in good faith tendered an instrument to the claimant as full satisfaction of

(b) The amount of the claim was unliquidated or subject to a bona fide dispute; and

(c) The claimant obtained payment of the instrument, the following subsections apply.

(2)    Unless subsection (3) of this section applies, the claim is discharged if the person against whom the claim is asserted proves that the instrument or an accompanying written communication **contained a conspicuous statement to the effect that the instrument was tendered as full satisfaction of the claim.**

KRS § 355.3-311 (emphasis added).

14.    Peoples Bank has the burden to prove the accord and satisfaction defense.

15.    Peoples Bank did not act in good faith when tendering the $180,000 check to Deere.

16.    The amount of the claim owed to Deere was not unliquidated nor was it subject to a bona fide dispute.

17.    Deere obtained the $180,000 check from Peoples Bank.

18.    The $180,000 check did not contain a "conspicuous statement" that the check constituted

19.    Peoples Bank did not send Deere an accompanying written communication with the $180,000 check containing a "conspicuous statement" that the check constituted full satisfaction of the claim.

20.     The Deere Collateral secures the amounts owed under the Multi-Use Account, and because Joshua Duvall's debts owed to Deere have not been fully satisfied, Deere is not required to release its liens until all of his debts with Deere are paid. (*See* Security Agreements, Section 5.

21.     The debt owed by Joshua Duvall under on his Multi-Use Account would have needed to be paid in full in order for Deere to release its liens on the Deere Collateral under the Security Agreements and Credit Agreement.

22.     Joshua Duvall agreed in each of the Security Agreements that any affiliate of an assignee could act as the agent of any assignee for the purposes of perfecting or enforcing the Security Agreement. Therefore, even though JDF wasn't listed as a secured party on the financing statements, JDF is an affiliate of Deere & Company (to whom the Security Agreements were assigned), was acting as Deere & Company's agent, and is therefore entitled to enforce the Security Agreements.

23.     The Deere Collateral secures the debt owed on Claim 3-3 to JDF, and JDF's lien is prior and superior to any interest of Peoples Bank.

## **CONCLUSION**

For all of the above reasons, the Court will enter the attached Judgment granting summary judgment in Deere's favor finding (1) Deere has a valid priority PMSI in the Deere Collateral securing the amounts owed in Claims 4 through 8; (2) that Deere's interest in the Deere Collateral are prior and superior to any interest of The People's Bank, Marion, Kentucky, and all other defendants herein; and (3) that Deere holds a second priority security interest in the Deere Collateral, behind only Deere's valid PMSI's, that secures the amounts owed in Claim 3-3 pursuant to a valid cross-collateralization clause.

Joan A. Lloyd
United States Bankruptcy Judge

Dated: January 7, 2021

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOSHUA DUVALL, et al. | ) | CASE NO.: 19-11272(1)(12) |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| NUTRIEN AG SOLUTIONS, INC., | ) | AP NO.  20-1012 |
| successor to SECURITY SEED AND | ) | |
| CHEMICAL, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA LEE DUVALL, et al. | ) | |
| | ) | |
| Defendant(s) | ) | |

**<u>JUDGMENT</u>**

Pursuant to the Memorandum-Opinion entered this date and incorporated herein by reference,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED that:

1.      Deere & Company possesses properly perfected first priority purchase money security interests in the Deere Collateral to secure its claims as set forth in Claim Nos. 4, 5, 6, 7-2, and 8;

2.      The Deere Collateral also secures the amounts owed to John Deere Financial, f.s.b. d/b/a John Deere Financial ("JDF") under the Multi-Use Account pursuant to a valid cross-collateral clause in each of the Security Agreements;

1

3.      JDF has properly perfected second priority security interests in the Deere Collateral, behind only Deere & Company's valid first PMSI's, which secures the amounts owed as set forth in Claim 3-3 pursuant to a valid cross-collateralization clause;

4.      Any transfer of the Deere Collateral from Joshua Duvall to D&D Farms was not free and clear of any of Deere & Company or JDF's liens in the Deere Collateral;

5.      Finally, the $180,000 payment received from Peoples Bank did not operate as an accord and satisfaction of the claims of Deere & Company or JDF.

6.      This judgment is not intended to and shall not modify the terms of the Agreed Order of Secured Status entered August 6, 2020 in the main bankruptcy case 19-11272-jal.

7.      This is a final judgment.

SO ORDERED this _____ day of January, 2021.

Joan A. Lloyd
United States Bankruptcy Judge
Dated: January 7, 2021

2