UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOSHUA DUVALL | ) | CASE NO.: 19-11272(1)(12) |
| BRANDI DUVALL | ) | |
| NATHAN DUVALL | ) | |
| JAIME DUVALL | ) | Administratively Consolidated |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| NUTRIEN AG SOLUTIONS, INC., | ) | AP NO. 20-1012 |
| successor to SECURITY SEED & | ) | |
| CHEMICAL, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA LEE DUVALL, et al. | ) | |
| | ) | |
| Defendant(s) | ) | |

**MEMORANDUM-OPINION**

This matter is before the Court on the Motion for Partial Summary Judgment of Plaintiff, Nutrien Ag Solutions, Inc., successor to Security Seed & Chemical, Inc. ("Nutrien") against Defendant Burkmann Feeds of Glasgow, LLC ("Burkmann Feeds") on Count III of the Complaint. The Court considered the Motion for Partial Summary Judgment of Nutrien, the Response of Burkmann Feeds, the Supplemental Response to the Motion for Partial Summary Judgment on Count III of the Complaint filed by Burkmann Feeds, the Reply to those Responses filed by Nutrien, and the comments of counsel at the hearing held on the matter. For the following reasons, the Court will **GRANT** Nutrien's Motion for Partial Summary Judgment against Burkmann Feeds on Count III of the Complaint.

## FINDINGS OF FACT

Between 2013 through 2017, Debtors Josh Duvall and Nathan Duvall executed five separate Applications and Note/Security Agreements with Nutrien. The first Note with Josh Duvall was dated April 15, 2013. The second Note was executed with Josh Duvall and dated January 3, 2014 for $150,100 with a maturity date of January 10, 2015. The third Note was executed with Josh Duvall and dated January 9, 2015 in the sum of $150,000. The fourth Note was dated October 26, 2015 with Josh Duvall for $150,000. This Note matured on January 10, 2017. The fifth Note/Security Agreement was dated November 17, 2016 with Nathan Duvall for $250,000.

In 2017, the Debtors sought financing from Nutrien for farm inputs, as well as consolidation of past due debts owed to Nutrien. On July 11, 2017, Nutrien executed an Application & Note/Security Agreement (referred to hereinafter as the "2017 Note"), with Debtors Josh Duvall, Brandi Duvall, Jaime Duvall and Nathan Duvall in the sum of $485,000. The 2013 Financing Statement between the parties was amended to add Debtor Brandi Duvall and the 2016 UCC Financing Statement was amended to add Jaime Duvall. Paragraph 2 of the 2017 Note contains the following language, by which Debtors granted a security interest to Nutrien in the following collateral:

> All of the following whether now owned or hereafter acquired, all products and proceeds thereof, all additions or accessions thereto, and all substitutions and replacements thereof: All crops growing, grown or to be grown in 2017 and subsequent years. All harvested crops. All warehouse receipts or other documents (negotiable or non-negotiable) issued for storage of such crops. All seeds, fertilizer, chemicals and petroleum, and any other crop input products. All inventory, contract rights, chattel paper, documents, instruments, supporting obligations, accounts, general intangibles, and cash and noncash proceeds from the sale, exchange, collection, or disposition of any of the Collateral. **All entitlements and payments, whether in cash or in kind, including but not limited to agricultural subsidy, deficiency, diversion, conservation, disaster, contract reserve, under any**

> **government or any similar or other programs.** All farm and business machinery, equipment and tools.

*See*, Nutrien's Proof of Claim, Ex. 1 to Plaintiff's Complaint.

Nutrien properly perfected its security interest in the above referenced collateral by filing UCC Financing Statements which used the same description of collateral set forth in the 2017 Note against each of the Debtors as follows:

| Debtor's Name | Filing Date | KY UCC File No. |
|---|---|---|
| Nathan Wayne Duvall | March 3, 2016 | 2016-2816825-31 |
| Joshua Lee Duvall | April 15, 2013 | 2013-2635440-80 |
| Jaime Long Duvall | June 29, 2017 | 2016-2816825-31 |
| Brandi Martin Duvall | June 30, 2017 | 2013-2635440-80 |

Burkmann Feeds sold and delivered feed for the Debtors' beef and dairy herd on an unsecured, open account basis. Debtors unpaid account with Burkmann Feeds amounted to $370,723.26. On September 12, 2018, Burkmann Feeds entered into a "Payment Agreement" on the past due open account balance owed by the Debtors with an entity referenced as "Duvall Dairy, 208 Reynolds Court, Oakland, Kentucky 42159." *See* Exhibit 3 to Nutrien's Motion for Partial Summary Judgment on Count III for a copy of the Payment Agreement. The Payment Agreement amount, $370,723.26, is listed as "The full amount of any Market Facilitation Program (MFP) payment(s) for Soybeans." The Payment Agreement states in part, "I hereby agree to give my entire MFP payment as partial payment for charges incurred regarding the above account number with Burkmann Feeds of Glasgow, LLC." It is unclear who actually signed the Payment Agreement, but it appears the signature is that of Josh Duvall.

On or about December 31, 2018, Josh and Brandi Duvall also executed a Promissory Note and certain Mortgages in favor of Burkmann Feeds to secure debts owed to it by Josh and Brandi Duvall. *See* Ex. C to Burkmann Feeds Response.

This Court has determined in another related Adversary Proceeding that "Duvall Dairy" is not a legal entity and even if it did exist, it did not organize as a formal entity and did not own any property known to this Court. Nevertheless, the Debtors and a parade of vendors and lenders to the Debtors in Central Kentucky have from time to time referred to it as an entity. This casual reference on loan documents does not change the fact that it does not exist and did not own any property to encumber.

Burkmann Feeds failed to file a lien on the interest it claimed in the MFP payments by filing a UCC Financing Statement with the Kentucky Secretary of State's Office against <u>any</u> debtor. In any event, "Duvall Dairy" did not own any crops and never grew any crops that triggered a right to a MFP payment. In 2018, according to the USDA Reporting Forms, known as "FSA-578 Crops Acreage Reports," all crops grown by Debtors in 2018 were grown by the individuals named in the report, either Joshua or Nathan Duvall.

In 2018, in order to be eligible for MFP payments, pursuant to federal regulations, a crop producer had to have a "crop acreage report on file with FSA for MFP crop commodities." *See* Exhibit 5 to Nutrien's Motion for Partial Summary Judgment on Count III, Farm Service Agency Market Facilitation Program (MFP) Fact Sheet, September 2018.

On December 21, 2018, in a federal lawsuit between Nutrien and the Debtors in the United States District Court for the Western District of Kentucky ("the District Court Action") the Debtors entered into an Agreed Order to Maintain Status Quo. The Agreed Order required the Debtors to

"deliver any . . . . government subsidy checks they have in their possession or later receive, properly endorsed to their attorney." *See* Ex. 4 to Plaintiff's Complaint.

In late 2018/early 2019, Debtors applied for and received MFP payments in an amount of approximately $95,000 as subsidy payments for crops grown in 2018. Debtors Joshua and Brandi Duvall then wrote two checks, collectively for $95,000 to Burkmann Feeds. These payments became the subject of a Show Cause Motion in the District Court Action filed by Nutrien against the Debtors. Debtors acknowledged receiving the checks and then paying the funds to Burkmann Feeds based on their unrecorded "Payment Agreement," but stated they believed the funds to have been "tariff payments" paid to them by the government based on tariffs imposed by the United States government on foreign governments.

The United States District Court retained jurisdiction over the criminal contempt issues but referred the civil case to this Court with "full jurisdiction over the enforcement of the Agreed Order, including but not limited to the ability to amend, modify or limit that Order."

Upon learning of the MFP payments to Burkmann Feeds by Debtors, Nutrien's counsel sent a letter demanding repayment of the MFP payments on April 25, 2019. On April 30, 2019, counsel for Burkmann Feeds responded by denying Nutrien's demand and stated Burkmann Feeds had no duty to investigate the source of the payments or whether a security interest existed with respect to the payments. *See*, Exhibits 8 and 9, to Nutrien's Motion for Partial Summary Judgment on Count III.

On January 16, 2020, Burkmann Feeds filed a Proof of Claim in the amount of $360,279.02 in Brandi and Joshua Duvall's bankruptcy case. Attached to the Proof of Claim is a Promissory Note dated December 31, 2018, a Real Estate Mortgage recorded on January 3, 2019 but nothing

-5-

that evidences a security interest by Burkmann Feeds on the Debtors' MFP payments, payments from government programs or "tariff payment."

## LEGAL ANALYSIS

Nutrien seeks an order granting partial summary judgment in its favor on Count III of its Complaint against Burkmann Feeds regarding its claim that Burkmann Feeds converted MFP payments in the amount of $95,000 that were subject to its perfected security interest under Fed. R. Civ. P. 56(c) made applicable herein through Bankr. R. Civ. P. 7056. Under that Rule, the Court must grant summary judgment to the moving party if the movant shows there is no genuine issue as to any material fact and the movant is entitled to summary judgment as a matter of law. A genuine issue of material fact exists when there are "disputes over facts that might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant must demonstrate to the court that the nonmovant's evidence is insufficient to establish an essential element of the nonmovant's claim. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986). Thereafter, the nonmovant "must come forward with 'specific fact showing there is a genuine issue for trial.'" *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986), quoting Fed. R. Civ. P. 56(e). Where the record taken as a whole could not lead a rational fact finder to rule for the nonmovant, there is no genuine issue for trial. *Id.* Nutrien has established there is no genuine issue of material fact regarding its claim that Burkmann Feeds converted the MFP payments in the amount of $95,000 that were subject to its perfected security interest. Therefore, it is entitled to partial summary judgment on its claim in Count III of the Complaint against Burkmann Feeds.

The undisputed facts establish that Burkmann Feeds had an unperfected interest in the MFP payments and that Nutrien's prior perfected security interest in the payments was superior to any interest of Burkmann Feeds. Since Nutrien's rights in the MFP payments were superior to Burkmann Feeds, Burkmann Feeds committed conversion by refusing to return the $95,000 MFP payments to Nutrien.

The Application & Note/Security Agreement executed by the Debtors on July 11, 2017, at Paragraph 2, granted a security interest to Nutrien on all entitlements and payments "including but not limited to agricultural subsidy, deficiency, diversion, conservation, disaster, contract reserve, under any government or any similar or other programs." As outlined in the Findings of Fact section of this Memorandum, Nutrien properly perfected its security interest in payments from all governmental programs by filing UCC Financing Statements against each of the Debtors. Since Burkmann Feeds did not perfect any security interest with respect to the funds owed them by the Debtors in 2018, Nutrien's interest takes priority over any interest of Burkmann Feeds in the MFP payments.

The Court finds the description of the collateral to encompass the MFP payments where it identified payments from "all governmental programs." The MFP payments did not fit the definition of "tariffs," which as pointed out by Nutrien in its Reply Brief, is defined as "duties imposed by a government on imported or in some countries exported goods." *See*, ftnt. 2 of Reply. As pointed out by Burkmann Feeds, the USDA was providing "direct payments to help [soybean] producers who have been directly impacted by illegal retaliatory tariffs, resulting in the loss of traditional exports." USDA Fact Sheet, see Burkmann Feeds Response, at p. 7. The payment was more in line with a "subsidy" defined as "a grant by a government to a private person or company to assist in

enterprise deemed advantageous to the public." Merriam-Webster.com dictionary, s.v. "subsidy," https://www.merriam-webster.com/dictionary/subsidy. In any event, the MFP payments at issue, were clearly payments by the United States government to private farmers, made through a government program. The description in the UCC Financing Statement was sufficient to cover these payments.

Burkmann Feeds contends that the July 11, 2017 Note constituted a novation. Burkmann Feeds relies upon a series of Nutrien loan transactions which are not disputed. Burkmann Feeds, however, misconstrues the law on novation. Kentucky law on novation is well settled. First, the burden to establish contract novation is on the party claiming its occurrence, here Burkmann Feeds. *Wells Fargo Financial Kentucky, Inc. v. Thomer*, 315 S.W.3d 335 (Ky. Ct. App. 2010). Second, the essential element in proving novation is intent by the creditor to extinguish an old obligation by substituting a new one. *Id.* In an attempt to establish intent of novation, Burkmann Feeds relies on the fact that the 2017 Note does not state that it is a renewal or that it relates back to the prior loans. This is not affirmative evidence of a novation.

In, *Wells Fargo*, the court rejected a claim that a novation occurred where the creditor consolidated prior loans and advanced additional sums. The court stated,

> A contract novation relieves parties of the obligations thereunder and results in a new agreement while an extension of additional credit under an existing obligation is merely an amendment and continuation of the original agreement. The burden to establish novation in on the party claiming its occurrence.

*Id.* at 339. The Court found that instead of novation, the loans at issue had been consolidated and additional funds were advanced. Here, Burkmann Feeds has submitted no evidence that Nutrien and the Debtors intended a novation which would subordinate Nutrien's first lien position to Burkmann

Feeds or any other creditor. There is no evidence that Nutrien loaned funds to the Debtors with the intent to subordinate its position.

Regardless, Nutrien's rights in the collateral attached on July 11, 2017 when it entered into a Security Agreement as part of the terms of the Note signed in 2017. It is undisputed that Burkmann Feeds' interest was unperfected and any rights it had to the MFP payments did not vest until the Payment Agreement was entered into on August 30, 2018. The Debtors' "rights" in the collateral occurred at the time they met the eligibility requirements of the MFP program. KRS 355.9-203(2). This was no later than August 30, 2018 when the Payment Agreement was signed. Furthermore, by the very terms of the Payment Agreement, Burkmann Feeds gained no rights to the MFP payments since the Payment Agreement was entered into between Burkmann Feeds and "Duvall Dairy." There has been no evidence that "Duvall Dairy" had any ownership interest in the 2018 soybean crop, upon which the MFP payments were based. Further evidence of this is the fact that the MFP payments were paid to the individual Debtors, not "Duvall Dairy."

In Kentucky, conversion is the "wrongful exercise of dominion and control over property of another." *State Auto Mut. Ins. Co. v. Chrysler Credit Corp.*, 792 S.W.2d 626, 627 (Ky. Ct. App. 1990). In *Kentucky Ass'n of Counties All Lines Fund Trust v. McClendan*, 157 S.W.3d 626, 632 n. 12 (Ky. 2005), the Kentucky Supreme Court set forth the elements of proof for a plaintiff on a conversion claim. They are:

> (1) the plaintiff had legal title to the converted property;
>
> (2) the plaintiff had possession of the property or the right to possess it at the time of the conversion;
>
> (3) the defendant exercised dominion over the property in a manner which denied the plaintiff's rights to use and enjoy the property and which was to the defendant's own use and beneficial enjoyment;

(4) the defendant intended to interfere with the plaintiff's possession;

(5) the plaintiff made some demand for the property's return which the defendant refused;

(6) the defendant's act was the legal cause of the plaintiff's loss of the property; and

(7) the plaintiff suffered damage by the loss of the property.

In *Blanken v. Kentucky Highlands Investment Corp.*, 2016 W.L. 310363 (E.D. Ky. 2016), the court recognized that a secured party's interest is sufficient to bring a conversion claim in Kentucky. In this case, as in the *Blanken* case, one of the parties, Burkmann Feeds, is an unperfected secured creditor with a subordinate interest that did not have the right to possess the collateral at issue at the time the conversion occurred. The Debtors were in default on their obligation owed to Nutrien at the time Burkmann Feeds took possession of the MFP payments. Nutrien's superior perfected interest in the MFP payments prevails over Burkmann Feeds' subordinate interest.

Nutrien made demand on Burkmann Feeds for return of the $95,000 paid to the Debtors which they then paid to Burkmann Feeds under the MFP program. Under Article 9 of the UCC, Nutrien had superior rights to these funds over Burkmann Feeds at the time Burkmann Feeds took possession of them. Burkmann Feeds exercised dominion and control over the funds in a manner that denied Nutrien its rights in the funds. Burkmann Feeds intended to interfere with Nutrien's rights to the payments when it refused Nutrien's demand for return of the funds and Nutrien was damaged by the loss of the funds by Burkmann Feeds' refusal to return them. Thus, all of the elements to establish a claim for conversion are met.

The facts as determined by the Court based upon the record are undisputed. Under Article 9 of the UCC, Nutrien had a perfected security interest in the $95,000 MFP payment that the Debtors paid to Burkmann Feeds. Burkmann Feeds' interest was subordinate to that of Nutrien and under the undisputed facts, Burkmann Feeds' retention of those funds constitutes conversion under Kentucky law. Accordingly, summary judgment in favor of Nutrien on Count III of the Complaint is appropriate.

## **CONCLUSION**

For all of the above reasons, the Motion for Partial Summary Judgment on Count III of the Complaint of Plaintiff Nutrien Ag Solutions, Inc. successor to Security Seed and Chemical, Inc. is **GRANTED**. An Order incorporating the findings herein accompanies this Memorandum-Opinion.

**UNITED STATES BANKRUPTCY COURT**
**WESTERN DISTRICT OF KENTUCKY**
**BOWLING GREEN DIVISION**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| JOSHUA DUVALL | ) | CASE NO.: 19-11272(1)(12) |
| BRANDI DUVALL | ) | |
| NATHAN DUVALL | ) | |
| JAIME DUVALL | ) | Administratively Consolidated |
| | ) | |
| Debtor(s) | ) | |
| | ) | |
| NUTRIEN AG SOLUTIONS, INC., | ) | AP NO. 20-1012 |
| successor to SECURITY SEED & | ) | |
| CHEMICAL, INC. | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| JOSHUA LEE DUVALL, et al. | ) | |
| | ) | |
| Defendant(s) | ) | |

# ORDER

Pursuant to the Memorandum-Opinion entered this date and incorporated by reference herein,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the Motion for Partial Summary Judgment of Plaintiff, Nutrien Ag Solutions, Inc., successor to Security Seed & Chemical, Inc. against Defendant Burkmann Feeds of Glasgow, LLC on Count III of the Complaint, be and hereby is, **GRANTED**.